UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | | | |
|---|---|---|---|
| LATOYA BOGAN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No. | 5:19-cv-379 |
| | ) | | |
| DIRECT ENERGY, LP, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## PLAINTIFF'S COMPLAINT

Plaintiff, LATOYA BOGAN ("Plaintiff"), by and through her attorneys, Hormozdi Law Firm, LLC, alleges the following against Defendant, DIRECT ENERGY, LP ("Defendant"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, *et seq.* ("TCPA").

2. In describing the importance of the TCPA, Senator Hollings, the TCPA's sponsor, said "I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.'" 137 Cong. Rec. 30.821 (1991).

3. As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

## JURISDICTION AND VENUE

4. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

5. This court has federal question jurisdiction because this case arises out of violations of

federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6. Venue and personal jurisdiction in this District are proper because the Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

7. Plaintiff is a natural person residing in the City of Raleigh, Wake County, State of North Carolina.

8. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

9. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is a Texas limited partnership and owner and one of North America's largest retail providers of electricity, natural gas, and home and business energy-related services with its main business office in the City of Houston, Harris County, State of Texas.

11. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

12. In or around January 2019, Defendant began calling Plaintiff on Plaintiff's cellular telephone, at 908-922-0130, which included or introduced an advertisement or constituted telemarketing.

13. Defendant calls Plaintiff from several numbers, including 888-212-6182, which is one of Defendant's telephone numbers.

14. In or around January 2019, Plaintiff answered at least one of Defendant's calls and told

Defendant's representatives to stop calling Plaintiff.

15. Despite Plaintiff's request that Defendant stop calling her, Defendant continued to call Plaintiff unabated in an attempt to solicit Defendant's products and services.

16. When Plaintiff answered Defendant's calls, she was greeted by a message spoken by a pre-recorded or artificial voice.

17. When Plaintiff answered Defendant's calls, she also experienced "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiff and sought to speak with Plaintiff in an attempt to solicit Defendant's products and services.

18. Plaintiff also received "abandoned calls" from Defendant.

19. Abandoned calls occur when Defendant's automated system calls more telephone numbers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the automatic telephone dialing system is unable to transfer the call it dialed to a human being, and the call is dropped.

20. Some of Defendant's calls to Plaintiff result in a voicemail message being left for Plaintiff.

21. The voicemail messages Defendant leaves for Plaintiff are spoken by a pre-recorded or artificial voice.

22. Prior to calling Plaintiff's cellular telephone, Defendant knew the number was a cellular telephone number.

23. None of the calls Defendant made to Plaintiff were for an emergency purpose.

24. All of the calls Defendants made to Plaintiff's cellular telephone resulted in Plaintiff incurring a charge for incoming calls.

25. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to

3

stop calling Plaintiff's cellular telephone.

26. Plaintiff has never given to Defendant prior express written consent to contact Plaintiff as described herein.

27. Even if Plaintiff provided Defendant with her cellular telephone number, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS") and/or a pre-recorded or artificial voice.

28. Even if at one point Defendant had prior express written consent to call Plaintiff's cellular telephone, Plaintiff revoked this consent as described above.

29. Defendant continued to call Plaintiff's cellular telephone after Defendant knew Plaintiff wanted the calls to stop.

30. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

31. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to store telephone numbers.

32. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers automatically.

33. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call stored telephone numbers without human intervention.

34. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers in sequential order.

35. The telephone dialer system Defendant used to call Plaintiff's cellular telephone has the capacity to call telephone numbers randomly.

36. The telephone dialer system Defendant used to call Plaintiff's cellular telephone selects

4

Case 5:19-cv-00379-D    Document 1    Filed 08/28/19    Page 4 of 6

telephone numbers to be called according to a protocol or strategy entered by Defendant.

37. The telephone dialer system Defendant used to call Plaintiff's cellular telephone simultaneously calls multiple recipients.

38. The dead air that the Plaintiff experienced on the calls that she received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's cellular telephone would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

39. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's cellular telephone without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

    a. Invading Plaintiff's privacy;
    b. Electronically intruding upon Plaintiff's seclusion;
    c. Intrusion into Plaintiff's use and enjoyment of her cellular telephone;
    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of her cellular telephone; and
    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting

5

to dispose of Defendant's unwanted calls.

**DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT**

40. Defendant's conduct violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice without prior express written consent in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiff, LATOYA BOGAN, respectfully requests judgment be entered against Defendant, DIRECT ENERGY, LP, for the following:

41. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

42. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

43. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

44. Any other relief that this Honorable Court deems appropriate.

DATED: August 28, 2019

Respectfully submitted,
HORMOZDI LAW FIRM, LLC

By: /s/ Shireen Hormozdi
Shireen Hormozdi
Hormozdi Law Firm, LLC
1770 Indian Trail Lilburn Road, Suite 175
Norcross, GA 30093
Tel: 678-395-7795
Fax: 866-929-2434
shireen@agrusslawfirm.com
shireen@norcrosslawfirm.com
Attorney for Plaintiff